NEW YORK LIFE INSURANCE COMPANY *v.* MOOSE.

4-3648

Opinion delivered January 14, 1935.

162

*Strait & Strait* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Dean, Moore & Brazil,* for appellee.

McHANEY, J. Appellee sued appellant to recover total and permanent disability benefits under the terms of such provisions in a policy of life insurance held by him and issued by appellant. The policy was for $5,000 and was dated April 5, 1928. Premiums of $130.55 were payable annually on January 2, each year, with 30 days of grace. The premium due January 2, 1932, was not paid when due, nor within the days of grace, and the policy lapsed for nonpayment of this premium as of said date. On said date the policy had a cash value of $150, to which was added a cash dividend of $29.60 and dividends on deposit with appellant in the sum of $33.84, or a total cash value of $213.44. Appellee was indebted to appellant on a premium note for $130.55 and $7.19 interest thereon or a total of $137.74, which, deducted from the total cash value as above, left a net cash value of $75.70. The policy provided, in event of default in payment of premium after three full years' premiums have been paid, for the following privileges or benefits:

(A) Temporary insurance for the face of the policy "shall, upon expiry of the period of grace, be continued automatically as temporary insurance as from the date of default for such term as the cash surrender value less any indebtedness hereon will purchase as a net single premium at the attained age of the insured, according to the American Table of Mortality and interest at 3 per cent. This temporary insurance will be without participation in surplus."

(B) If, within three months after such default, but not later, the insured desired to do so, he could surrender the policy and, instead of temporary insurance, have his policy indorsed for participating paid-up insurance in such amount as the net cash surrender value would purchase at his age at default, based on the same tables and interest rate.

(C) If the insured does not want option (B) as next above set out, he may surrender the policy for its net cash surrender value within three months but not later.

Appellee having failed to exercise either option (B) or (C) within three months, the automatic provisions of clause (A), the temporary insurance clause, continued in effect, and on May 2, 1932, appellant wrote appellee the following letter:

"The above-numbered policy lapsed for the nonpayment of the premium and interest due January 2, 1932. Pursuant to the terms of your contract with the company, the amount of your indebtedness to the company has been satisfied by deducting it from the sum which would otherwise be available for the purchase of insurance in the event of the nonpayment of premium or interest when due, and the balance of said sum has been used to purchase, and has purchased, paid-up insurance for $4,926, for the term of one year and 322 days after the 2d day of January, 1932, and your written agreement evidencing said indebtedness has been canceled.

"If you wish any other evidence of said paidup term insurance than this letter, the company will, upon receipt of the policy at its home office, indorse said paid-up term insurance upon the policy and return the policy to you; also, if you wish, the company will forward to you said written agreement evidencing your said indebtedness to the company, which has been canceled as aforesaid."

Appellee received this letter in due course, but made no reply to it and did nothing further in regard to same. About February 5, 1933, the agent who took the application for the policy, but who severed his connection with appellant in September, 1929, wrote appellant a letter advising it that appellee had been afflicted with tuberculosis since May, 1931, but had made no disability claim under his policy. He asked that the company do anything for him that was possible, and that appellee told him he had let his policy lapse and took extended insurance. To this letter appellant replied denying any liability on the claim because not filed within six months after default in payment of premium due January 2, 1932. On November 1, 1933, appellee wrote appellant requesting blank forms to make proof of total disability, to which

164

appellant replied declining to consider favorably the claim and declining to send blanks.

Thereafter appellee filed this action to recover the accrued total disability benefits at the rate of $50 per month. Trial resulted in an instructed verdict for appellee, and the case is here on appeal.

The disability provisions of the policy are: "Upon receipt at the company's home office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(A) Waiver of Premium. The company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(B) Income Payments. The company will pay to the insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the insured.

"In event of default in payment of premium after the insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the insured is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the company not later than six months after said default. * * *

"Disability benefits shall not apply if the disability of the insured shall result from self-inflicted injury or

from military or naval service in time of war, or from engaging as a passenger or otherwise in aviation or aeronautics; nor shall these benefits apply to the temporary insurance or to the paid-up insurance provided herein under 'Surrender Values', or to any dividend additions provided under 'Participation in Surplus Dividends'.''

The complaint alleged that appellee became disabled by reason of tuberculosis on or about June 1, 1932, and has been continuously disabled since said date. Disability, according to the complaint, occurred after default in the payment of the premium due January 2, 1932. There is no provision in the policy covering disability occurring after default. The policy provides for disability insurance in two situations or on two conditions: 1st, the receipt of proof of disability at the home office of appellant before default in the payment of premium. and, 2nd, the receipt of proof within six months after default of a disability which occurred before default. In the first case, premiums are thereafter waived during disability as defined in the policy and income payments of $10 per month per $1,000 of insurance are payable. In the second case, ''the policy will be restored and the benefits shall be the same as if said default had not occurred.'' But proof must be made within six months after default that insured is and has been continuously from date of default so totally disabled, etc. Appellant therefore contends that the judgment should be reversed because appellee has not brought himself within either condition because he made no proof of disability before January 2, 1932, the date of default; and because he made no proof of disability occurring before January 2, 1932, within six months from that date. But appellee insists that appellant should have applied the net cash value of the policy on January 2, 1932, $75.70, to the payment of a semi-annual premium, so that there would not have been a default until six months later, and that, had it done so, the notice given on February 5 would have been timely. A sufficient answer to this contention is that the policy very definitely provides a different application of said sum as hereinbefore stated with two options on the part of appellee regarding same. Appellant complied strictly with

said automatic provision (A) for temporary insurance. In this respect the case is ruled by the recent case of *Life & Casualty Ins. Co. of Tenn.* v. *Goodwin,* 189 Ark. 1073, 76 S. W. (2d) 93. The contract having expressly provided for the disposition of the net cash value in the hands of appellant after default, ''we have no authority to change it, nor have we the right to refuse to enforce it,'' as we said in the case last cited. Therefore appellant had no right to apply it other than as provided in the policy. Cases relied upon by appellee are not in point.

It is finally insisted by appellee that there is some substantial proof that he became totally and permanently disabled in 1931, before default in premium payment, and that the matter of giving notice and making proof of disability became unimportant, as it was a condition subsequent. Although the complaint alleged total disability beginning June 1, 1932, after default, Dr. Williams testified over appellant's objections and exceptions, that in his opinion appellee became totally disabled in May, 1931, although he continued to carry on thereafter. Appellee says himself he was not totally disabled until about June 1, 1932. Assuming, however, that there was sufficient evidence to go to the jury as to whether total disability occurred prior to default, we are of the opinion that the benefits were granted solely upon the condition that the proofs of total and permanent disability before default be furnished within six months after default. In other words, the disability must commence before default in premium payment, and the benefits will then be granted ''provided due proof * * * is received by the company not later than six months after said default.'' This proviso simply states the conditions under which disability benefits will be granted. It necessarily excludes all others. If the disability occurs before default and proof thereof is made within six months thereafter, the disability is covered; otherwise it is not. The general rule is that the failure to give notice or to make proof within a specified time in accordance with the terms of the policy does not operate as a forfeiture of the right to recover, unless the policy in express terms or by necessary implication makes

same a condition precedent to recovery. *Hope Spoke Co. v. Maryland Casualty Co.*, 102 Ark. 1, 143 S. W. 85. Here the requirement is condition precedent in express terms, as it is the condition on which the benefits are granted. See also *N. Y. Life Ins. Co. v. Farrell*, 187 Ark. 984, 63 S. W. (2d) 520; *N. Y. Life Ins. Co. v. Jackson*, 188 Ark. 292, 65 S. W. (2d) 904. In the latter case we held, to quote the syllabus: "Under the terms of a policy of life insurance, it was the proof of disability and not the fact thereof that was essential for recovery of disability benefits under a policy of life insurance."

Not having made the proof within the time required by the policy, assuming that there was a question for the jury as to disability before default, the court erred in directing a verdict for appellee.

Judgment reversed.

JOHNSON, C. J., (dissenting). I agree to the reversal of this case but not to its dismissal, because appellant had the right under the contract of insurance to exercise the automatic features thereof as was done after appellee failed to pay his premium on February 2, 1932, but I do not agree that the exercise of this privilege extinguished the liability, if any, which had theretofore accrued.

It is true appellee alleged in his complaint that he became totally and permanently disabled in contemplation of the provisions of his contract of insurance in June, 1932, which date was subsequent to February 2, 1932, but the testimony tended to show, and the trial court admitted this testimony, that appellee became totally and permanently disabled in June, 1931, at a time when the policy was in full force and effect. The admission of this testimony was tantamount to permission by the trial court to consider the complaint as amended to conform to the proof. The practice thus followed by the trial court is fully authorized by §§ 1234 to 1239, Crawford & Moses' Digest, and had been approved by us in a number of cases. Therefore, when the complaint is considered as amended to conform to the proof, the issue is presented that appellee was totally and permanently disabled in June, 1931, and at a time when the policy was

in full force and effect. If this issue of fact be true, then the law is that liability attached against the insurer and in favor of the insured in June, 1931, and no subsequent act or acts of the parties can impair this vested right of contract. We expressly so decided in *Mo. State Life Ins. Co. v. Foster,* 188 Ark. 1116, 69 S. W. (2d) 869, where we said: "We are definitely committed to the doctrine that liability attaches under contracts of insurance similar to the one under consideration upon causation of the injury, and it necessarily follows from this that no subsequent act or acts of the parties can destroy the liability thus created." See *Ætna Life Ins. Co. v. Langston,* 189 Ark. 1067, 76 S. W. (2d) 50.

We have consistently held that, under contracts of insurance providing indemnity for total and permanent disability, liability attaches and comes into being upon the happening of total and permanent disability and not at some future time. See *Smith* v. *Mutual Life Ins. Co.,* 188 Ark. 1111, 69 S. W. (2d) 874; *Ætna Life Ins. Co.* v. *Davis,* 187 Ark. 398, 60 S. W. (2d) 912; *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335; *Mo. State Life Ins. Co.* v. *Case,* 189 Ark. 223, 71 S. W. 199; *Equitable Life Assur. Soc.* v. *Felton,* 189 Ark. 318, 71 S. W. 1049.

The majority ignore the principle of law here stated by asserting that in all the cases referred to notice or the filing of proof of injury as provided for in the contracts was not treated as a condition precedent to the right of liability, and that in the case under consideration the proof of injury is made a condition precedent to the right of liability. My conception of the law is that where liability has once attached no subsequent act or acts of the parties can impair this vested right. Such has been our previous holding on this question, and I am unwilling to change my opinion by every wave of unfavorable criticism. Moreover, we should not construe the provisions of this contract providing for filing of proof of injury as a condition precedent to appellee's right of recovery. The late Chief Justice HART in *Pfeiffer* v. *Mo. State Life Ins. Co.,* 174 Ark. 783, 297 S. W. 847, stated the applicable rule as follows: "The condition of the policy in respect to giving notice of permanent disability

as well as making proof of death operates upon the contract subsequent to the fact of loss. The insured has done all that he can do towards carrying out his part of the contract, and the liability of the company under the terms of the policy has attached. Nothing remains to be done except to give the company notice of 'its liability and make proof thereof.' " See 55 L. R. A. 291.

My interpretation of the Pfeiffer case, *supra,* is that any condition in a policy of insurance which can only operate upon the policy and the parties subsequent to the attaching of liability or the vesting of the rights of the parties under such contracts should be treated as a condition subsequent, thereby effectuating the benevolent purposes and intentions of the parties. Any other interpretation of such clauses of insurance contracts puts "the cart before the horse" and insures only the prompt acts of the parties and not the injury or death contracted against.

My conception of the law is also that life insurance is effected between the contracting parties to indemnify in the event of the death of the insured; and that disability insurance is effected to insure against total and permanent disability of the insured; and that any provision of such policy which has the purpose of avoiding liability after the death or total and permanent disability of the insured should be treated and construed as conditions subsequent and not conditions precedent. *Home Indemnity Co.* v. *Banfield Bros. Packing Co.,* 188 Ark. 683, 67 S. W. (2d) 203; *Woodman Acc. Ass'n* v. *Byers,* 55 L. R. A. 291 and note; *Hope Spoke Works* v. *M. C. Company,* 102 Ark. 1, 143 S. W. 85; *Mutual Life Ins. Co.* v. *Carroll,* 209 Ky. 522, 273 S. W. 54; *Merchants' Life Ins. Co.* v. *Clark,* (Tex. Civ. App.) 256 S. W. 969; *Southern Life Ins. Co.* v. *Howard,* 146 S. W. 1107; *Roseberry* v. *American Benevolent Ass'n,* 148 Ky. 465, 121 S. W. 785; *Trippe* v. *Provident Fund Soc.,* 140 N. Y. 23, 35 N. E. 316; *Ins. Co.* v. *Boykin,* 12 Wall. 433.

As said by the New York Court of Appeals in *McNally* v. *Phenix Ins. Co.,* 137 N. Y. 389, 33 N. E. 475: "Conditions in any insurance policy which affect the

contract and parties prior to the loss, including all statements and representations preceding the contract, must receive a fair construction, according to the intentions of the parties; but those conditions which relate to matters after the loss, defining the mode of adjustment and recovery, must receive a more liberal construction, in favor of the insured.''

The majority attach the same importance to a condition in the policy of insurance which becomes operative only after liability attaches that is given conditions which operate prior to accrual of liability, and this holding, in my opinion, is in the teeth of our previous opinions. (Pfeiffer, Hope Spoke Works and other cases, *supra*) and the great weight of authority on the subject and is certainly contrary to the common rules of fairness and justice.

Moreover, the majority ignore and disregard the plain mandate of § 6153 of Crawford & Moses' Digest, which provides: ''Hereafter an action may be maintained in any of the courts of this State to recover on any claim or loss arising on a policy of insurance on property or life against the company issuing any such policy, or the sureties on the bond required by the laws of this State as a condition precedent to its right to do business in this State, at any time within the period prescribed by law for bringing actions on promises in writing; and any stipulation or provision in any such policy of insurance requiring such action to be brought within any shorter time or be barred shall be and the same is hereby declared to be void.''

This statute was enacted in 1901 and definitely declares the legislative policy of this State in reference to conditions which attach subsequent to accrual of liability, and it plainly provides that such conditions in policies of insurance are void if in conflict with the limitation statutes of this State. Appellant was admitted to do business in this State on the express condition of this statute, and certainly cannot complain at its enforcement.

I assert with confidence that the parties to this contract never intended that this policy of insurance should receive the interpretation now given it by the majority.

At any rate, the insured certainly had no such thought in mind, and, if the insurer had such secret intention, it should not prevail in this action. Such conditions in policies of insurance should be considered as inserted for some reasonable and probable purpose and not with a view of defeating a recovery in case of loss. The object of this condition was to enable the insurer within a reasonable time after receipt of injury to inquire into the facts in reference thereto. See cases cited *supra*.

If this be the purpose of the condition of the policy now under consideration, it is a condition subsequent, and not a condition precedent, and appellant can prevail by this condition only to the extent that it was injured by lack of immediate notice. See *Hope Spoke Works* v. *Maryland Cas. Co.*, 102 Ark. 1, 143 S. W. 85.

The great weight of American authority, including our previous decisions, agrees upon the rule thus stated, and I feel that we are now deserting all our previous opinions and leaving in utter confusion the law on this subject.

But grant that the condition in the policy is a condition precedent to recovery; under our holding in *Pac. Mutual Life Ins. Co.* v. *Dupins*, 188 Ark. 450, 66 S. W. (2d) 284, appellee was not compelled at all events to give notice or file his proof within the time designated in the policy. We there said: "It is self-evident that appellee could not notify appellant of something he did not know. At no time within the specified period did appellee know that he was suffering from the disastrous disease afterwards made known to him by his physician." *A fortiori*, here neither appellee nor his physician knew within six months after the lapse of his policy that he was then suffering with tuberculosis of the bone, and this fact was only determined some time subsequent thereto.

No court of respectable authority has ever held that an insane person was required to give notice or make proof of loss while under such disability regardless of the language employed by the insurer in the policy, but, on the contrary, hold that such insane person is excused

of performance during such disability. See *Ins. Co.* v. *Boykin,* 93 U. S. 433, and cases cited, *supra.*

The majority opinion recognizes no exception to the broad rule stated, and, if followed in the future, not even an insane person will be excused from complying with notice of proof of loss. Such holding is repugnant to justice and humanity, and, as said by the Supreme Court of the United States in the Boykin case, cited *supra*: "If he (insured) was so insane as to be incapable of making an intelligent statement, this would of itself excuse that condition of the policy."

Therefore, if our holding in the Dupins, Hope Spoke Works and Phifer cases are to be considered as authority in the future, their application should be announced here. Appellee admittedly performed every requirement of his contract up to and for some time after he became totally and permanently disabled according to his physicians' testimony, and to permit appellant to avoid liability under its contract because appellee failed to advise them of something he did not know is giving to the contract of insurance an interpretation not in contemplation of the parties at the time of its execution and a strained and unwarranted construction in favor of the insurer. Such interpretation overturns all our previous opinions on this subject, as we have uniformly held, until now, that such contracts should be interpreted and construed favorably to the insured and against the insurer, it having prepared the contract.

The majority cite two cases only in support of the rule announced, namely: *N. Y. Life Ins. Co.* v. *Farrell,* 187 Ark. 984, 63 S. W. (2d) 520, and *N.Y. Life Ins. Co.* v. *Jackson,* 188 Ark. 292, 65 S. W. (2d) 904. In the more recent case of *Smith* v. *Mutual Life Ins. Co.,* 188 Ark. 1111, 69 S. W. (2d) 874, the Farrell and Jackson cases were explained and construed as follows: "Appellee contends that under the doctrine announced in *New York Life Ins. Co.* v. *Farrell,* 187 Ark. 984, 63 S. W. 520, the trial court was justified in the conclusion reached. This is not the effect of the Farrell case. We held in the Farrell case, as we have in all other cases decided, that liability attached upon causation of the injury suffered, but that the cause

of action on such liability accrues only after the filing of the proof of disability. The making of the proof of loss was not treated or considered as a condition precedent to liability in the Farrell case, but it was treated as a condition precedent to the right of recovery. The rule is, as announced in the Farrell case and in all others on the subject announced by this court, that liability attaches upon causation of total and permanent disability of the insured, but that the right of recovery is postponed until notice to the insurer of the disability or the filing of the proof of disability or the elapsation of time provided for in the policy in reference to the accrual of the right of recovery. *Ætna Life Ins. Co.* v. *Davis,* 187 Ark. 398, 60 S. W. (2d) 912; *Sovereign Camp W. O. W.* v. *Meek,* 185 Ark. 419, 47 S. W. (2d) 567; *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.

"Appellant insists also that *New York Life Ins. Co.* v. *Jackson,* 188 Ark. 292, 65 S. W. (2d) 904, is authority for the trial court's holding. Neither can we agree to this contention. In the Jackson case no proof of loss was ever submitted to the insurance company. No notice was given to the insurer or to any agent with authority of the asserted right of liability. The first information brought to the knowledge of the insurance company was a letter of date January 16, 1932, addressed to the general agent at Little Rock. In the Jackson case, as heretofore stated, no effort had been made to effect proof of loss prior to the filing of the suit and the suit was filed more than five years after the receipt of the alleged injury."

It appears therefore from the construction heretofore given the two opinions cited and relied upon by the majority that the conditions were considered as subsequent to liability and not precedent thereto as now interpreted by the majority. It will be noted that we expressly said: "The making of proof of loss was not treated or considered as a condition precedent to liability but it was treated as a condition precedent to the right of recovery."

There is a broad difference between a holding that an insured must perform a certain act before a recovery

may be effected as held in the Farrell case and a holding that his failure to do a certain act forfeits all liability under the contract as is done by the majority. In the one case, recovery is postponed until the contract is substantially complied with, and in the other a forfeiture of vested rights is declared contrary to all law.

In the Jackson case, the insured ignored the provision in his policy providing for notice and proof of loss for a period of five years, and we held this destroyed his right to recover. Certainly an insured cannot ignore a condition subsequent for an indefinite period of time, and we there held, in effect, as a matter of law that Jackson by his own neglect had totally destroyed the insurer's opportunity to examine and investigate and for that reason should not recover.

Moreover, in the Farrell case, as subsequently construed, we expressly held that the provision in the policy for notice and proof of loss was not a condition precedent to liability, and in the Jackson case, as subsequently construed, that a five-year delay in giving notice or effecting proof of loss barred the insured's right of action. It is indeed a desperate stretch of imagination, and a patent confession of lack of authority, to cite and rely upon these two cases as supporting the majority opinion.

The effect of the majority opinion is to overrule by implication the Hope Spoke Works, the Phifer, the Smith, the Dupins and many other previous opinions of this court, and I assert that, since this is the direct result and effect, these cases should be directly overruled and nullified, so that the bench and bar may be definitely apprised of the change and reversal in views of the majority of the court.

This cause should be remanded with directions to submit the question of when appellee became totally and permanently disabled to the jury under proper instructions.

For the reasons stated, I respectfully register my dissent.

I am authorized to say that Justices HUMPHREYS and MEHAFFY concur in the views here expressed.