## POE v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA.

District Court, E. D. Arkansas, W. D.
March 13, 1940.

C. E. Johnson, of Little Rock, Ark., and J. R. Campbell, of Hot Springs, Ark., for plaintiff.

Henderson, Meek & Hall, of Little Rock, Ark., for defendant.

TRIMBLE, District Judge.

The facts in this case have been stipulated, and reference is made to the agreed statement of facts without repetition of the facts in this opinion. The issue arising from the facts, as agreed upon, is the question whether the plaintiff is entitled to recovery based upon the amount of $2,500, for which the policy of insurance was originally written, or whether the plaintiff is entitled to recovery based upon the amount of paid-up participating insurance in the sum of $429, which the defendant purchased with the proceeds of the value remaining in the policy after the alleged lapse of the policy because of non-payment of the premium due on August 28, 1938.

It is agreed that the annual premium on the policy of insurance, which became due on August 28, 1938, was not paid. It is further agreed that dividends on the policy had been declared and accumulated in the hands of the defendant insurance company in an amount in excess of the premium which became due on August 28, 1938.

168

■ The plaintiff contends that the defendant should have applied such dividends in payment of said premium. The answer to this contention is that the insured and the defendant had contracted expressly with respect to the use which was to be made of such dividends; and the defendant was obligated to use such dividends in the manner provided for in the contract of insurance, and in no other manner. The application executed by the insured, which forms a part of the policy contract, contained a clear and unambiguous direction to the defendant that,— "The surplus is to be used to accelerate maturity."

The first paragraph of Section 1 of the policy provides with respect to the distribution of surplus in the form of dividends; and the second paragraph of said section provides that dividends will automatically accumulate to the credit of the policy and will be used to mature the policy as an endowment. These provisions form the contract between the insured and the defendant with respect to the use of dividends. The insured did not, at any time prior to the expiration of the grace period following the non-payment of the premium due August 28, 1938, exercise, or make any attempt to exercise, any of the options contained in Section 1 of the policy with respect to changing the application of the dividend from the purpose hereinbefore stated. The insured was given ample opportunity to exercise the option contained in the policy so as to change the use of dividends from the purpose of maturing the policy as an endowment, which was the purpose selected by the insured in his application, to the purpose of applying the dividends in payment of the premium. The agreed statement of facts shows that a notice of premium due was duly mailed to the insured prior to the due date and that a second, warning notice, was likewise duly mailed prior to the expiration of the grace period. The agreed statement of facts contains no facts to rebut the presumption of receipt of these notices by the insured; and it must be held that such notices were so received. Therefore, the defendant had no right, and certainly no duty, to apply the dividends in payment of the premium due on the policy. Had the defendant used dividends to pay the premium, it would have violated the terms of the contract of insurance, and would have rendered itself liable to the insured for the amount so used in violation of the contract.

■ When the premium due August 28, 1938, was not paid within the grace period, the policy lapsed as provided for in Section 3 of the policy, and the additional provisions of Section 3 became operative. It is my opinion that these provisions clearly require that the defendant use the value of the policy, after lapse for non-payment of premium, to purchase paid-up participating life insurance for the insured. This was done, and, in so doing, the defendant acted in strict compliance with the terms of the policy and thereby discharged its obligation to the insured. The phrase "to purchase automatically" constitutes an unambiguous requirement that the defendant act "automatically", that is, without option or choice on its part, in purchasing such insurance with the proceeds of the value of the policy. Such action by the defendant did not constitute a forfeiture of the policy but, on the contrary, resulted in preserving the full value of the policy (including the reserve and the accumulated dividends) for the benefit of the insured in the form of paid-up participating life insurance.

■ It is true that Section 3 of the policy provides that, upon proper release and delivery of the policy within one month from the date of lapse, the insured may secure the cash value of the policy in lieu of the paid-up insurance. However, if the insured desired to exercise this option on his part, affirmative action by the insured was required. The insured took no action at all in this respect within the specified time. Therefore, the paid-up insurance remained in effect. The agreed statement of facts shows that the defendant duly mailed a letter to the insured on November 17, 1938, notifying the insured that the policy had lapsed for failure to pay the premium due August 28, 1938, and that, thereupon, the participating paid-up insurance feature became operative for $429. I find no facts in the agreed statement which are sufficient to rebut the presumption of receipt of this letter by the insured. It is not shown that the insured made any objection to the lapse notice, or, at any time prior to his death, applied for reinstatement of the policy. Therefore, it must be held that the policy was not reinstated and that the only right existing in favor of the insured at the time of his death was the right to the paid-up participating insurance which had been purchased by the defendant pursuant to the provisions of the policy of insurance.

It is agreed that the policy of life insurance in this case became a completed contract upon delivery, acceptance of the policy, and payment of the premium, all of which occurred in Arkansas. Therefore, the law of Arkansas is controlling with respect to this case. The Arkansas court, in Life & Casualty Insurance Company of Tennessee v. Goodwin, 189 Ark. 1073, 76 S.W.2d 93, 96, has held, in construing the obligations of the insurer under a policy containing provisions similar to the policy in this case, that the insured is bound by the provisions for purchase of paid-up insurance unless he exercise the options given him within the specified time limit. In the cited case, the contention was made that the cash surrender value of the policy should have been applied in payment of the premium. In answering this contention, the court said: "After default in paying premiums, it is the insured's move, and if he does not exercise this right, and within the ninety days limited for that purpose, he is bound by the automatic conversion of the policy into paid-up insurance as is provided by the contract. The contract so expressly provides, and we have no authority to change it, nor have we the right to refuse to enforce it."

The Goodwin case, supra, was followed with approval in New York Life Insurance Company v. Moose, 190 Ark. 161, 78 S. W.2d 64, 66. In the latter case, it was shown that the insurer held not only the reserve on the policy but also dividends accumulated to the credit of the policy, the situation being the same in this respect as in the present case. The insured contended that the reserve and dividends, less the loan on the policy, should have been applied in payment of premium. In holding that the life insurance company had properly complied with the provisions of the policy, which were similar in effect to the provisions of the policy in this case, the court said: "Appellant complied strictly with said automatic provision (A) for temporary insurance. In this respect the case is ruled by the recent case of Life & Casualty Ins. Co. of Tenn. v. Goodwin [189 Ark. 1073], 76 S.W.2d 93, 96. The contract having expressly provided for the disposition of the net cash value in the hands of appellant after default, 'we have no authority to change it, nor have we the right to refuse to enforce it,' as we said in the case last cited. Therefore appellant had no right to apply it other than as provided in the policy."

The Arkansas court has consistently followed the doctrine in the cases cited above. In the most recent case, National Reserve Life Insurance Company v. Cole, 194 Ark. 433, 108 S.W.2d 471, 474, which likewise involved a policy with provisions similar in effect to those of the policy in this case, the court said: "Appellant, in treating appellee's insurance as extended, acted in obedience to the contract. The kind of insurance appellee would be entitled to if premiums were not paid was set out in the policy, and appellee retained the policy and at all times was charged with knowledge of its terms. The right reserved in his behalf was predetermined as a benefit to prevent forfeiture in the event he should fail, intentionally, by force of circumstances, or through oversight, to meet his premium obligations."

In this case, the court also expressly held that the insurer is not required to give the insured any notice to make an election upon his failure to pay a premium.

Judgment will, therefore, be entered for the plaintiff for the amount tendered into court, $437.58, together with plaintiff's costs herein expended.