**James Mark BALLARD; James Marvin Ballard, Appellees,**

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE CO., Appellant.**

**No. 90–2519.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1991.

Decided April 30, 1991.

Thomas A. Mars, Springdale, Ark., for appellant.

Elton A. Rieves, IV, West Memphis, Ark., for appellees.

Before McMILLIAN and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

MAGILL, Circuit Judge.

Northwestern National Life Insurance Company appeals from the trial court's[1] conclusion that its group life insurance policy's notice of disability provision was a condition subsequent to the waiver of premium payments and the trial court's finding that the decedent had provided notice of her disability to the insurance company as soon as was reasonably possible. In this diversity case, we review the trial court's state law ruling de novo, under the Supreme Court's recent decision in *Salve Regina College v. Russell,* — U.S. —, —, 111 S.Ct. 1217, 1219–21, 113 L.Ed.2d 190 (1991), and affirm the ruling and factual finding.

I.

On October 1, 1973, Mary Wilson Ballard, now deceased, became insured under a group life insurance policy issued by Northwestern National Life Insurance Company (NWNL) to Crittenden County Memorial Hospital in West Memphis, Arkansas.[2] The policy provided $15,000 in

---

1. The Honorable John Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas. The parties consented to a trial before a magistrate judge pursuant to 28 U.S.C. § 636(c) (1988).

2. The insurance policy provided, in relevant part:

   BENEFITS. The Company will, subject to the following conditions and provisions, waive the payment of each premium on this policy the due date of which occurs during the period of continuous total disability of the Insured. This provision covers only disability as defined herein which commences (1) while this policy is in force and while no premium is unpaid after the expiration of the grace period for payment thereof and (2) prior to the date on which the Insured attains 60 years of age.

   Benefits will be allowed only upon receipt by the Company at its Home Office of due proof that the Insured has become disabled and that disability has already continued uninterruptedly for a period of at least 6 months. Except as provided below, a premium will not be waived if the due date of such premium is more than one year prior to receipt at the Home Office of the Company of written notice of claim....

   TOTAL AND PERMANENT DISABILITY DEFINED. Total disability as used herein is defined as incapacity to engage in any occupation for remuneration or profit which incapacity is the result of bodily injury or disease suffered or contracted after the Effective Date of this policy....

   NOTICE OF CLAIM. No claim for benefits hereunder shall be valid unless written notice thereof is given to and received by the Company (a) during the lifetime of the Insured, (b) during the continuance of total disability, and (c) within one year of the due date of the first premium in default, if there be default, and total and permanent disability is established as provided elsewhere herein. Failure to give

coverage, and Mrs. Ballard's beneficiaries were her husband and son.

NWNL's arrangement with the hospital operated as follows. Each month, NWNL would send the hospital a Premium Statement Listing, which contained the names of all hospital employees insured under NWNL's group plan. The Premium Statement Listing had two parts, a white copy and a yellow copy. After receiving the Listing, the hospital would return the yellow copy to NWNL along with payment for the premiums of its covered employees. When there was a change in coverage, the hospital would draw a line through the insured employee's name on both copies of the Listing, and would write the reason for the change on the yellow copy, selecting one of seven responses provided on the form. The hospital kept the white copy.

Mrs. Ballard suffered continuously from a total and permanent disability as defined in the insurance policy from October 1980 until her death. On April 12, 1981, Mrs. Ballard stopped working at the hospital because of her disability. The hospital's personnel department knew Mrs. Ballard quit because of her disability. In May 1981, someone in the personnel department drew a line through Mrs. Ballard's name on the Premium Statement Listing, erroneously wrote "terminated" next to her name, instead of "disabled," and forwarded the yellow copy to NWNL. As a result of this error, after May 1981 no premiums were paid on Mrs. Ballard's life insurance policy.

From 1981 until a few weeks before her death, Mrs. Ballard was able to pay bills and tend to family business. Approximately a week before her death, Mrs. Ballard gave her son a handwritten note telling him that she had a $15,000 insurance policy with the hospital. Mrs. Ballard died on September 20, 1986.

In June 1987, Mrs. Ballard's widower and son submitted proof to NWNL that (1) Mrs. Ballard had a total and permanent disability as defined in the insurance policy; (2)

the disability continued without interruption from October 1980 until September 21, 1986; and (3) Mrs. Ballard was fifty-one when she died. The Ballards requested payment of the $15,000 under the terms of the policy. NWNL refused payment on the ground that Mrs. Ballard had not complied with the notice and due proof provision of the policy. The Ballards brought suit in federal district court.

The issue before the trial court was whether the Ballards had provided proper notice of Mrs. Ballard's permanent disability in order to waive the payment of premiums during the five years between the hospital's error and Mrs. Ballard's death. The relevant policy language states: "[Waiver] will be allowed only upon receipt by the Company at its Home Office of due proof that the Insured has become disabled and that disability has already continued uninterruptedly for a period of at least 6 months." App. at 34. The Ballards contended that this notice and proof provision was a condition subsequent to waiver of the premium payments. Reading the provision as a condition subsequent results in waiver occurring at the time of disability, and notice and proof of disability is not needed before waiver. NWNL argued that the notice and proof of disability was a condition precedent, and that it had to be given within one year of the default in premium payments in order to waive the payments.[3] NWNL contended that because notice and proof were not received until after Mrs. Ballard's death, the premium payments were not waived and NWNL was not liable on the policy.

NWNL also argued that even if the notice and proof of disability provision was a condition subsequent, Mrs. Ballard did not give notice as soon as was reasonably possible, as the policy required: "Failure to give such notice within such time shall not invalidate any claim if it shall be shown that it was not reasonably possible to give it within such time and that such notice was given as soon as was reasonably possi-

---

such notice within such time shall not invalidate any claim if it shall be shown that it was not reasonably possible to give it within such time and that such notice was given as soon as was reasonably possible.…

App. at 34.

3. The policy provides that an insured has one year after default to notify NWNL of the disability. *See supra* note 2.

ble." App. at 34. NWNL contended that Mrs. Ballard could have given notice of her disability any time before her death, and her failure to do so invalidated the notice given after her death. The Ballards argued that it was not reasonably possible for Mrs. Ballard to provide notice of her disability to NWNL before her death because she did not know that the hospital had erroneously classified her as terminated.

The trial court, after reviewing Arkansas case law, first held that the notice and proof of disability provision was a condition subsequent. It also found that the Ballards had provided notice as soon as was reasonably possible under the circumstances. The trial court thus ordered NWNL to pay the Ballards $15,000, a 12% penalty, pre- and postjudgment interest, and reasonable attorney's fees. NWNL appealed to this court.

## II.

### A. Notice of Proof of Disability

NWNL first argues that the trial court erred in holding that the notice and proof of disability provision was a condition subsequent to the waiver of premium payments. NWNL asserts that Arkansas case law clearly holds that such a provision is a condition precedent and therefore, the Ballards are not entitled to the $15,000.

■ The issue of whether the notice and proof of disability provision is a condition subsequent or precedent to the waiver of the premium payments is a matter of Arkansas law. The trial court held that the provision was a condition subsequent. In previous cases such as this, we have deferred to the state law ruling of a federal court sitting in the state whose law controls, unless the ruling is fundamentally deficient in analysis, without a reasonable basis, or contrary to reported state court opinion. See Economy Fire & Cas. v. Tri-State Ins. Co., 827 F.2d 373, 375 (8th Cir. 1987). However, we are no longer permitted to defer and must subject such state law rulings to de novo review. See Salve Regina College v. Russell, — U.S. —, —, 111 S.Ct. 1217, 1219–21, 113 L.Ed.2d 190 (1991).

Like the trial court, we have reviewed the Arkansas case law on whether a notice and proof of disability provision is a condition subsequent or precedent to the waiver of premium payments. Some cases have held that the provision was a condition precedent. See, e.g., American Nat'l Ins. Co. v. Freeman, 192 Ark. 474, 92 S.W.2d 210, 211 (1936); New York Life Ins. Co. v. Moose, 190 Ark. 161, 78 S.W.2d 64, 67 (1935); Barnett v. Southwestern Life Ins. Co., 269 Ark. 940, 601 S.W.2d 604, 606 (Ark.Ct.App.1980). Other cases have held that the provision was a condition subsequent. See, e.g., Home Life Ins. Co. v. Keys, 187 Ark. 796, 62 S.W.2d 950, 951 (1933); American Gen. Life Ins. Co. v. First Am. Nat'l Bank, 19 Ark.App. 13, 716 S.W.2d 205, 208 (1986) (en banc); J.C. Penney Life Ins. Co. v. Warren, 268 Ark. 1132, 599 S.W.2d 415, 417 (Ark.Ct.App.1980). Whether the state courts hold the provision a condition subsequent or precedent turns largely on the exact policy language involved. The case with policy language closest to the policy language in this case is Home Life Ins. Co. v. Keys, 187 Ark. 796, 62 S.W.2d 950 (1933). The notice and proof of disability provision in that case stated: "On receipt by the company at its home office [of due proof of disability], the company will waive the payment of each premium...." Id. 62 S.W.2d at 951. The Arkansas Supreme Court held that the provision was a condition subsequent. Id. The NWNL and Home Life provisions are functionally identical. Both waive premium payments on receipt of notice and proof of disability. Therefore, under Arkansas law, NWNL's notice and proof provision is a condition subsequent.

Further supporting our conclusion is Arkansas' general approach to notice and proof of disability provisions. Under Arkansas law, for such a provision to be held a condition precedent, the policy must have "inescapable language" directing that conclusion. See American Gen., 716 S.W.2d at 207. This approach comports with Arkansas' rule of interpreting and construing insurance policies strictly against the insurer. See Cooper Tire & Rubber Co. v. Northwestern Nat'l Cas. Co., 268 Ark. 334, 595 S.W.2d 938, 940 (1980). We believe

that NWNL's policy does not use the sort of inescapable language the Arkansas courts have found necessary to hold that a notice provision is a condition precedent. Therefore, the trial court properly determined that NWNL's notice and proof provision was a condition subsequent.

### B. Reasonableness of Notice

 NWNL next argues that the trial court's factual finding that Mrs. Ballard could not have reasonably provided notice before her death and that her family provided notice of her disability as soon as reasonably possible was clearly erroneous. NWNL relies on a number of Arkansas cases interpreting similar policy provisions, and contends that the only possible excuse for not providing notice is that the insured is so severely disabled he or she cannot give notice. *See, e.g., Mutual Life Ins. Co. v. Morris*, 191 Ark. 88, 83 S.W.2d 842, 845 (1935) (not reasonably possible to give notice where insured was "critically ill and in no condition to look after his business affairs with scrupulous exactness"); *J.C. Penney*, 599 S.W.2d at 418 (not reasonably possible to give notice where insured was "gravely ill and barely able to take care of his day to day needs").

Although it is true that most of the Arkansas cases addressing this issue have done so in the context of physical or mental inability to provide notice, nothing in the insurance policy or Arkansas law requires that the inquiry be so limited. In fact, an en banc decision of the Arkansas Court of Appeals suggests just the opposite. In *American Gen. Life Ins. Co. v. First Am. Nat'l Bank*, 19 Ark.App. 13, 716 S.W.2d 205 (1986) (en banc), the court, addressing the reasonableness requirement, stated: "The question is whether notice and proof were given as soon as reasonably possible.... Failure [to give notice] has been excused only in those cases where there were grave and extenuating circumstances prohibiting timely notification of claim and proof of disability." *Id.* 716 S.W.2d at 209–10.

In this case, the undisputed evidence of the hospital's erroneous notation concerning Mrs. Ballard's status supports the trial court's finding. Because she was unaware that through no fault of her own the premiums had lapsed, it was not reasonably possible for Mrs. Ballard to provide notice. The notice her family then provided after Mrs. Ballard's death was as soon as reasonably possible under the circumstances. Thus the trial court properly analyzed the facts in this case under Arkansas law.

NWNL also argues that to affirm the trial court's finding on this issue would lead to a grossly inequitable result. It contends that as a result of the hospital's mistake, it did not receive any premiums for five years, and thus to hold it liable for $15,000 would be unfair. The argument is without merit, and we note only that if the hospital had notified NWNL correctly, under the policy NWNL would have been obligated to waive the premium payments for Mrs. Ballard during her five-year period of disability.

### III.

For the foregoing reasons, the trial court's judgment is affirmed.